Patric A. Lester (SBN 220092)
pl@lesterlaw.com
Lester & Associates
5694 Mission Center Road, #358
San Diego, CA 92108
Phone (619) 665-3888
Fax (314) 241-5777

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LUCAS on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HOOTERS OF AMERICA LLC,<br><br>Defendant. | Case No. **'14CV1958 BTM DHB**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**<br><br>**JURY DEMANDED** |

COMPLAINT - CLASS ACTION

INTRODUCTION

1.      This action for damages and other legal and equitable remedies results from the illegal actions of Hooters of America LLC ("Hooters" or "Defendant") in using an automatic telephone dialing system to send unsolicited text messages to David Lucas's ("Lucas" or "Plaintiff") cellular telephone in direct contravention to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

2.      "Consumer complaints about abuses of telephone technology - for example, computerized calls to private homes - prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012)(internal citations omitted).

3. In an effort to enforce this fundamental federal right to privacy, Plaintiff files the instant class action complaint alleging violations of the TCPA.

4. Defendant has caused Plaintiff and the putative class actual harm, not only because they were subjected to the aggravation that necessarily accompanies these messages, but also because Plaintiff and the putative class have to pay their cell phone service providers for the use of their cellular telephones and such calls are an intrusion upon seclusion, diminish cellular battery life, and waste data storage capacity.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 (general federal question), § 1337, 47 U.S.C. § 227 (TCPA). Venue in this district is proper because Plaintiff resides here, the conduct complained of herein occurred within this jurisdiction district and Defendant transacts business here.

6. At all times relevant herein Defendant conducted business at four locations in San Diego County, California: 1400 Camino De La Reina, San Diego, CA 92108; 410 Market Street, San Diego, CA 92101; 775 Center Dr., San Marcos, CA 92069 and 3186 Vista Way, Oceanside, 92056, all within this judicial district.

## PARTIES

7. Plaintiff is, and at all times mentioned herein was, an individual citizen residing in San Diego County, California.

8. At all times relevant, Plaintiff was a "person" as defined by 47 U.S.C. § 153(39).

9. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein was, a corporation whose primary corporate address is in the State of Georgia, with its principle place of business and/or headquarters located at 1815 The Exchange Se, Atlanta, Georgia 30339.

10. As Defendant Hooters is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11. Defendant is a restaurant chain with hundreds of locations in the United

States.

12. As noted above, in 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices.

13. The TCPA regulates, among other things, the use of prerecorded messages and the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

15. Unlike more conventional advertisements, such text messages actually costs their recipients money because cell phone users must pay their wireless service providers either for each text message call they receive or in advance for an allocated allowance of text messages, regardless of whether or not the message is authorized.

## FACTUAL ALLEGATIONS

16. Defendant utilizes bulk SPAM text messaging, or SMS marketing, to send unsolicited text messages, marketing and advertising its events.

17. "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

18. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS or "text"

message call is successfully made, the recipient's cell phone rings or otherwise notes the receipt of the text message, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

19. On or about June 14, 2014, at approximately 8:57 a.m. (PST), Defendant sent two unsolicited text messages to Plaintiff's cellular telephone ending in "1024." These text messages read:

> "HOOTERS: Celebrate Fathers Day at Hooters. Buy 10 wings get 10 free, Sunday June 16th, dine in only, with purchase of a drink."

20. On or about July 7, 2014, at approximately 9:09 a.m. (PST), Defendant sent two unsolicited text messages to Plaintiff's cellular telephone ending in "1024." These text messages read:

> "HOOTERS:  Show this text today and buy 10 wings and get wings 10 free with the purchase of a drink. Dine in only."

21. The aforementioned SPAM text messages were form texts that were sent to consumers *en masse* and not just solely to the Plaintiff, which is indicative of the use of an automatic telephone dialing system.

22. Defendant used telephone number 36832 to send this unsolicited SPAM text message to Plaintiff's cellular telephone.

23. At no time did Plaintiff provide Plaintiff's cellular phone number to Defendant through any medium, nor did Plaintiff consent to receive such an unsolicited text message.

24. Plaintiff has never signed-up for, and has never used, Defendant's services or products, and has never had any form of business relationship with Defendant.

25. Through the unsolicited SPAM text message, Defendant contacted

Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

26. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

27. The cellular telephone number Defendant texted was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1).

28. This text message constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

29. Plaintiff did not provide Defendant or its agent prior express consent to receive text messages, including unsolicited text messages, to his cellular telephone, pursuant to 47 U.S.C. § 227 (b)(1)(A).

30. The unsolicited text message by Defendant, or its agent, violated 47 U.S.C. § 227(b)(1).

31. On information and belief, Defendant "Hooters" sent nearly identical text messages to hundreds if not thousands of persons without their prior express consent while using an automatic telephone dialing system.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated ("the Class").

33. Plaintiff defines the class, subject to amendment, as follows:
(1) All persons in the United States (2) to whose cellular telephone number (3) Hooters or it's agent sent a non-emergency text message (4) using an automatic telephone dialing system (5) within 4 years of the complaint (6) without prior express consent.

34. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the tens of thousands, if not more. Thus, this matter should be

certified as a Class action to assist in the expeditious litigation of this matter.

35. Plaintiff seeks to represent and is a member of the proposed Class. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

36. Plaintiff does not know the exact number of members in the Class, but based upon the nature of the message to Plaintiff, Plaintiff reasonably believes that Class members number at minimum in the hundreds if not thousands.

37. Plaintiff and all members of the class have been harmed by the acts of Defendant.

38. This Class Action Complaint seeks money damages and injunctive relief but is not intended to request any recovery for personal injury and claims related thereto.

39. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The class can be identified easily through records maintained by Hooters.

40. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to, the following:

    a) Whether within fours years of the filing of this complaint, Hooters engaged in a pattern of sending text messages to cellular telephone numbers without express consent to send such messages;

    b) Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation;

     c) Whether Hooters used an automatic telephone dialing system; and

     d) Whether Hooters thereby violated the TCPA.

41. As a person who received text messages from Hooters, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class, and have no interests which are antagonistic to any member of the Class.

42. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

43. A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel Defendant to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

44. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

### COUNT I - TCPA (TEXT MESSAGES)

45. Plaintiff incorporates the above factual allegations herein.

46. Hooters made unsolicited telephone calls to the wireless telephone number of Plaintiff and the other members of the Class with text messages using an

1  automatic telephone dialing system.

2     47.  These text messages were sent without the prior express consent of
3  Plaintiff or the Class.

4     48.  Hooters has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii),
5  which makes it "unlawful for any person within the United States . . . to make any call
6  (other than a call made for emergency purposes or made with the prior express consent
7  of the called party) using any automatic telephone dialing system or an artificial or
8  prerecorded voice . . ." As a result of Defendant's illegal conduct, the members of the
9  Class suffered actual damages and, under section 227(b)(3)(B), are each entitled to, inter
10 alia, a minimum of $500.00 in damages for each such violation of the TCPA.

11    49.  Plaintiff and class members are also entitled to and do seek injunctive
12 relief prohibiting Defendant's violation of the TCPA in the future.

13    WHEREFORE, Plaintiff requests that the Court enter judgment in favor of
14 Plaintiff, the Class and sub-class and against Defendant for:

15    (1) Statutory damages pursuant to 47 U.S.C. § 227(b)(1);
16    (2) Injunctive relief prohibiting such violations of the TCPA by Defendant in
17       the future;
18    (3) An award of attorneys' fees and costs to counsel for Plaintiff and the Class;
19    (4) Such other relief as the Court deems just and proper.

20                    TRIAL BY JURY
21    Pursuant to the seventh amendment to the Constitution of the United States
22 of America, Plaintiff is entitled to, and demands, a trial by jury.

23

24 Dated: August 21, 2014                Lester & Associates
                                         By:   /s/ Patric A. Lester
25                                             Patric A. Lester
                                               Attorney for Plaintiff,
26                                             David Lucas
                                               pl@lesterlaw.com
27

28